Kent J. Schmidt (SBN 195969)
schmidt.kent@dorsey.com
DORSEY & WHITNEY LLP
600 Anton Boulevard, Suite 2000
Costa Mesa, CA 92626-7655
Telephone:  (714) 800-1400
Facsimile:  (714) 800-1499

M. Benjamin Machlis (admitted *pro hac vice*)
machlis.ben@dorsey.com
Megan Houdeshel (admitted *pro hac vice*)
houdeshel.megan@dorsey.com
DORSEY & WHITNEY LLP
111 S. Main Street, 21st Floor
Salt Lake City, UT 84111-2176
Telephone: (801) 933-7360
Facsimile: (801) 933-7373

Attorneys for Defendant California Cascade
Building Materials, Inc.

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDEN ENVIRONMENTAL CITIZEN'S GROUP, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA CASCADE BUILDING MATERIALS, INC., a Delaware corporation; AMAR S. DOMAN, an individual; and JAMES CODE, an individual,<br><br>Defendants. | CASE NO:  2:19-cv-01936 TLN KJN<br><br>**DEFENDANT CALIFORNIA CASCADE BUILDING MATERIAL INC.'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Filed/Lodged Concurrently: (1) Motion to Dismiss, (2) Request for Judicial Notice, and (3) Declaration of Mark Benjamin Machlis<br><br>Date/Time:  February 20, 2020 at 2:00 p.m.<br>Judge:         Troy L. Nunley<br>Courtroom:  2 |

1

CALIFORNIA CASCADE'S MOTION TO DISMISS
CASE NO. 2:19-CV-01936 TLN KJN

4814-3056-2994\3

**TO THE HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT Defendant California Cascade Building Materials Inc. ("California Cascade"), on February 20, 2020, at 2:00 p.m., or as soon thereafter as this matter may be heard, before the Honorable Troy L. Nunley, of the District Court for the Eastern District of California, located in Courtroom 2 of the Robert T. Matsui United States Courthouse, 501 I Street, Sacramento, California 95814, will and hereby does move the Court for an Order as follows:

1.    Dismissing Plaintiff's First Amended Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

2.    Awarding Defendants their costs and fees pursuant to 33 U.S.C. § 1365(d); and

3.    Granting such other relief as the Court deems to be just and proper.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, and the concurrently-filed Request for Judicial Notice, the Declaration of Benjamin Machlis and exhibits attached thereto, and any argument the Court may entertain at the hearing on this matter.

Respectfully submitted,

Dated:  January 21, 2020                DORSEY & WHITNEY LLP


By:  /s/ *Kent J. Schmidt*
Kent J. Schmidt (SBN 195969)
M. Benjamin Machlis (admitted *pro hac vice*)
Megan Houdeshel (admitted *pro hac vice*)

Attorneys for Defendant California Cascade Building Materials, Inc.

4814-3056-2994\4

# TABLE OF CONTENTS

**Page(s)**

I.   INTRODUCTION ................................................................................................................ 1

II.  FACTS ............................................................................................................................... 2

    A.     The Clean Water Act.................................................................................................. 2

    B.     The Dispute ............................................................................................................... 2

    C.     California Cascade's Facility ..................................................................................... 3

III. ARGUMENT ..................................................................................................................... 4

IV.  CONCLUSION .................................................................................................................. 8

CALIFORNIA CASCADE'S MOTION TO DISMISS
CASE NO. 2:19-CV-01936 TLN KJN

4814-3056-2994\4

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................................................4

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ...............................................................................................................4, 5

*Cardenas v. NBTY, Inc.*,
    870 F. Supp. 2d 984 (E.D. Cal. 2012) ......................................................................................4

*Ecological Rights Found. v. Pacific Gas & Electric Co.*,
    713 F.3d 502 (9th Cir. 2012) .....................................................................................................7

*Erickson v. Pardus*,
    551 U.S. 89 (2007) .....................................................................................................................7

*Magellan Pipeline Co., LP v. S.D. Dep't of Revenue & Regulation*,
    837 N.W.2d 402 (S.D. 2013) .....................................................................................................6

*Paulsen v. CNF, Inc.*,
    559 F.3d 1061 (9th Cir. 2009), *cert. denied,* 130 S.Ct. 1053 (2010) ....................................4, 7

*Rose v. Beverly Health & Rehab. Servs.*,
    356 B.R. 18 (E.D. Cal. 2006) ....................................................................................................5

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) .....................................................................................................5

**Statutes**

33 U.S.C. §§ 1311(a), 1342 .............................................................................................................2

33 U.S.C. §§ 1342(p)(2)(B), 1342(p)(4)(A) ...................................................................................2

**Other Authorities**

40 C.F.R. § 122.26 ................................................................................................................. *passim*

Environmental Protection Agency, *NPDES Storm Water Program, Question and Answer
    Document*, Volume 2 p. 2 (July 1993) ......................................................................................6

Environmental Protection Agency, *U.S. EPA Interim Revised NPDES Inspection Manual*
    243 (2017) ..................................................................................................................................6

ii

4814-3056-2994\4

Federal Rule of Civil Procedure 8(a)(2) ................................................................................................4

Federal Rule of Civil Procedure 12(b) ................................................................................................4

Federal Rule of Evidence 201 ..............................................................................................................5

iii

4814-3056-2994\4

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## **I.    INTRODUCTION**

In its First Amended Complaint ("FAC" or "First Amended Complaint"), Plaintiff Eden Environmental Citizen's Group ("Plaintiff") asserts that this case is about egregious unpermitted discharges of toxic pollutants from Defendant California Cascade Building Material, Inc.'s ("California Cascade") facility in Sacramento that are degrading the Sacramento River. I is not. A closer examination of this charge reveals that, rather than being about California Cascade's discharges, the entire case and all legal theories hinge on a technical and discrete legal question which this Court can and should resolve on a motion to dismiss.

The Clean Water Act ("CWA") requires stormwater runoff that discharges to "Waters of the United States" be permitted under a national pollutant discharge elimination system ("NPDES") permit. The discharge of stormwater that is collected in municipal separate storm sewer systems ("MS4" or "Municipal System") are permitted collectively under an NPDES permit issued to the operator of the Municipal System and must meet all applicable effluent limitations at the point it discharges from the Municipal System. *See* 40 C.F.R. § 122.26(a)(3).

Critical to this case, the CWA separately mandates that stormwater discharges from certain enumerated industrial operations and construction sites be separately permitted under another NPDES permit and meet applicable effluent limitations at the point stormwater leaves the facility.

As the First Amended Complaint acknowledges, stormwater from California Cascade's facility flows into Sacramento's MS4 and discharges, along with all of the other stormwater that flows into the MS4, to a tributary of the Sacramento River. (FAC ¶ 74.) This discharge is regulated under the NPDES permit for Sacramento's MS4.

The core issue in Plaintiff's entire case is whether California Cascade is the type of enumerated industrial operation that is required to also have coverage under a separate NPDES permit regulating stormwater at the point it leaves the facility. Plaintiff alleges Cascade is such a facility and must have coverage under California's General Permit for Storm Water Discharges Associated with Industrial Activities (the "General Permit"). Plaintiff fails to plead facts sufficient to show that California Cascade

1

4814-3056-2994\4

is a facility that is required to have coverage under a separate NPDES permit.

Plaintiff's claims fail to state a claim for relief. In light of these failings, dismissal of the First Amended Complaint is proper under Federal Rule of Civil Procedure 12(b)(6).

## II.  FACTS

### A.  The Clean Water Act

The CWA prohibits all non-permitted or non-exempt discharges to waters of the United States 33 U.S.C. §§ 1311(a), 1342. Stormwater runoff that flows to a "Water of the United States" is a discharge if it is from a municipal stormwater system, construction site or industrial activity. *See* 33 U.S.C. §§ 1342(p)(2)(B), 1342(p)(4)(A); 40 C.F.R. § 122.26; *Ecological Rights Found. v. Pacific Gas & Electric Co.*, 713 F.3d 502, 511–12 (9th Cir. 2012). EPA regulations define "stormwater discharges associated with industrial activities" as stormwater discharges from one of eleven categories of facilities, identified by their SIC codes. *See* 40 C.F.R. § 122.26 (b)(14). Whether a facility is classified under a qualifying SIC code depends on the "primary activity" of the "establishment." (*See* Defendant's Request for Judicial Notice, Declaration of Benjamin Machlis ("Machlis Dec.") Exh. A, 1987 (Standard Industrial Classification Manual) p. 11, filed concurrently herewith.)

In California, such facilities are regulated by the California State Water Resources Control Board ("State Water Board") under the General Permit, updated most recently in 2015 (*See* Request for Judicial Notice, Exh. B (Current General Permit).[1]) The General Permit sets out procedures and conditions under which stormwater discharges are allowed under the CWA.

### B.  The Dispute

The First Amended Complaint alleges seven violations of the CWA. The first six ask the Court to apply the General Permit and find violations of it from July 6, 2015 to the present. The seventh asks the Court to find California Cascade has been violating the CWA since September 17, 2019 by failing to have coverage under the General Permit.

Each of the seven claims turns on Plaintiff's assumption that California Cascade's facility is engaged in "industrial activity" and must be permitted accordingly. In support of this assumption,

---

[1] Also available at https://www.waterboards.ca.gov/water_issues/programs/stormwater/docs /industrial/2014indgenpermit/wqo2014_0057_dwq_revmar2015.pdf.

CALIFORNIA CASCADE'S MOTION TO DISMISS
CASE NO. 2:19-CV-01936 TLN KJN

4814-3056-2994\4

Plaintiff pleads only that there are multiple activities occurring at the facility that could be regulated under separate SIC codes: warehousing and wholesaling (5031), wood product manufacturing (2421, 2431, 2491, 2499), and local trucking operations (4213 and 7538). (FAC ¶ 80.) Plaintiff further asserts that wood product manufacturing and local trucking operations are "distinct and separate economic activit[ies]." (*Id.* ¶¶ 70–71.) But, as discussed below, this is a legal conclusion and Plaintiff provides no factual support for this conclusory assertion.

**C.      California Cascade's Facility**

California Cascade operates a warehouse and wholesaling lumber yard where it receives cut lumber then sells that lumber. On limited occasions, it makes specialized cuts to the lumber it sells to accommodate requests of clients purchasing its wholesale lumber. (FAC ¶ 64.) California Cascade's operations include trucking activities to facilitate delivery of the material it wholesales. (*Id.* ¶ 66.) When wood products manufacturing and trucking are the primary activity at a facility, stormwater runoff from such a facility is "associated with industrial activity" and therefore require NPDES coverage. (*Id.* ¶ 67.) Warehousing and wholesaling of lumber does not, however, fall within the definition of industrial activity and does not require NPDES coverage. *See* 40 C.F.R. § 122.26(b)(14).

California Cascade previously had coverage under the General Permit based on the erroneous determination that the proper SIC Code for the facility was 2499. (*Id.* ¶ 78.) In the prior Notice of Intent to Sue letter that Plaintiff sent California Cascade alleging violations of the General Permit which was attached to the original Complaint filed with this Court, Plaintiff alleged that California Cascade inappropriately identified SIC Code 2499 as the facilities primary SIC Code. (*See* Dkt. No. 1, at 41.) In light of this allegation, California Cascade began investigating its permit coverage and, if needed, take steps to come into compliance. During this investigation, California Cascade determined that Plaintiff was correct on the point that SIC Code 2499 was not the appropriate SIC Code for the facility and that the primary SIC Code for the facility was actually 5031, a SIC Code for which coverage under the General Permit is not required. (FAC ¶ 78.) Since the primary SIC Code for the facility is a SIC Code for which coverage under the General Permit is not required, California Cascade submitted a Notice of Termination to the State Water Board that expressly stated that, while California Cascade had

CALIFORNIA CASCADE'S MOTION TO DISMISS
CASE NO. 2:19-CV-01936 TLN KJN

4814-3056-2994\4

historically been regulated under the General Permit on the erroneous basis that SIC Code 2499 applied, in fact 5031 applied, taking California Cascade out of the General Permit's ambit. (Machlis Dec. Exh. C (Notice of Termination) & Exh. D (Additional Information).) Upon receipt of the Notice of Termination and Additional Information, the State Water Board conducted an inspection of California Cascade's operations and approved the termination decision. (Machlis Dec. Exh. E (Screenshot Reflecting Termination of Coverage).)

In a revised Notice of Intent to Sue letters, Plaintiff has settled on the new allegation theory that, because "multiple different activities" take place at the facility, some of which could be classified under other SIC Codes, the facility is required to have coverage under the General Permit. (FAC ¶¶ 68–69.) However, as explained below, this is not the law. Only where these other activities are sufficiently economically distinct and separate to be considered their own economic units, does the SIC Code applicable to these secondary activities become relevant to whether the facility is required to have coverage under the General Permit.

## III.    ARGUMENT

California Cascade brings this Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) because Plaintiff has failed to meet its burden of showing California Cascade is subject to the regulations Plaintiff alleges it has violated and Plaintiff therefore fails to state a basis for this Court to grant Plaintiff the relief requested.

Under Fed. R. Civ. P. Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To meet this requirement, the complaint must be supported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and those factual allegations must "plausibly give rise to an entitlement to relief," *Cardenas v. NBTY, Inc.*, 870 F. Supp. 2d 984, 989 (E.D. Cal. 2012); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The court need not accept conclusory allegations contradicted by documents referred to in the complaint as true or "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Paulsen v. CNF, Inc.,* 559 F.3d 1061, 1071 (9th Cir. 2009), *cert. denied,* 130 S.Ct. 1053 (2010).

4

To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In short, a complaint must give the defendant fair notice of a legally recognizable claim and the grounds on which it rests. *Twombly*, 550 U.S. at 555.

While courts generally take allegations of material fact as true and construe them in the light most favorable to the nonmoving party, "[a] district court may consider materials in a 12(b)(6) motion to dismiss that are not part of the pleadings but that are 'matters of public record' of which the court may take judicial notice pursuant to Federal Rule of Evidence 201." *Rose v. Beverly Health & Rehab. Servs.*, 356 B.R. 18, 22 (E.D. Cal. 2006). Moreover, the court is not required to "accept as true allegations that contradict matters properly subject to judicial notice" *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

The First Amended Complaint pleads seven causes of action. Six of the causes of action allege violations of the terms and conditions of coverage under the General Permit. (*See* FAC ¶¶ 122–58.)

Plaintiff concedes that these causes of action are entirely contingent on the sufficiency of its allegation in the seventh cause of action—that California Cascade is required to have coverage under the General Permit. (*Id.* ¶ 82.) But Plaintiff's First Amended Complaint fails to plead a cognizable claim that California Cascade is required to have coverage under the General Permit. Instead, Plaintiff sets forth an erroneous articulation of the legal standard for determining whether a facility is required to have permit coverage based on its SIC Code classification and alleges facts to satisfy this misarticulated legal standard. This is insufficient.

Coverage under the General Permit is required for any facility whose activities meet the definition of "industrial activity" set forth in 40 C.F.R. § 122.26(b)(14). (*See* General Permit at 9.) The categories in the regulation include narrative descriptions of activities that require permit coverage regardless of SIC Code and descriptions for which coverage depends on applicable SIC Code for the facility.

5

4814-3056-2994\4

Coverage under the General Permit is required if the primary industrial activity engaged in at the facility has a SIC Code listed in 40 C.F.R. § 122.26(b)(14), regardless of whether other activities occurring at the facility are activities whose SIC Code would require coverage.[2] Environmental Protection Agency, *U.S. EPA Interim Revised NPDES Inspection Manual* 243 (2017) ("[I]f the facility's primary activity is not included in 40 CFR § 122.26(b)(14), the facility is not subject to the permitting requirements *even if the facility conducts secondary activities* that are identified therein . . . .") (emphasis added); *see also Magellan Pipeline Co., LP v. S.D. Dep't of Revenue & Regulation*, 837 N.W.2d 402, 410 (S.D. 2013) ("And by basing classification on an establishment's primary activity and principal service rather than each included service, the SIC Manual recognizes that the primary activity controls even though other services may be provided.").

As Plaintiff acknowledges, there is an exception to this rule providing that, where a facility is comprised of multiple "establishments," permit coverage must be determined for each establishment. (*See* FAC at ¶ 68 (citing Fact Sheet at 9)). Contrary to Plaintiff's assertion that this applies any time "multiple different activities are occurring" at a facility, this rule is limited to circumstances where those activities are sufficiently economically separate and distinct to be considered separate "establishments." *Id.*

The SIC Code Manual defines an establishment as an "economic unit, generally at a single physical location, where business is conducted or where services or industrial operations are performed." (Machlis Dec. Exh. A (SIC Code Manual) p. 12.) The SIC Code Manual continues by stating that:

> [w]here distinct and separate economic activities are being conducted at a single physical location … each activity should be treated as a separate establishment where: (1) no one industry description in the classification includes such combined activities; (2) the employment in each such

---

[2] An establishment's primary activity "is determined by its principal product or group of products produced or distributed, or services rendered." (Machlis Dec. Exh. A (SIC Code Manual) p. 15.) The principal product or service is "[i]deally . . . determined by its relative share of value added at the establishment." (*Id.* at 15.) Other variables that may be considered include the "value of sales," "value of receipts or revenues," and "the number of employees or production rate for each process." (*Id.* at 15–16.); Environmental Protection Agency, *NPDES Storm Water Program, Question and Answer Document*, Volume 2 p. 2 (July 1993).

6

4814-3056-2994\4

> economic activity is significant; and (3) separate reports can be prepared on the number of employees, their wages and salaries, sales or receipts, and other types of establishment data.

(*Id.*)

Here, Plaintiff's First Amended Complaint must be dismissed because it does not allege (1) that SIC Code 5031 is not the primary SIC Code or (2) that the various activities that it alleges occur at the facility are sufficiently economically separate and distinct to be considered separate establishments.

First, Plaintiff alleges no *primary* activity. The Complaint is silent on that issue. Instead, Plaintiff suggests the Court should look to the General Permit's Fact Sheet to determine how to classify a facility "when multiple different activities are occurring there." (FAC ¶ 68.) Plaintiff then details the three types of industrial activity that occur at the facility and identifies the SIC codes for each. (*Id.* ¶¶ 63–66, 70–71, & 79–80.) Plaintiff asserts that a "facility can have multiple SIC Codes" and emphasizes that wood products manufacturing and trucking are the "same type of activity [that] would occur at any other" wood manufacturing facility or trucking company respectively. (*Id.* ¶¶ 70–71.) On this basis, and nothing more, Plaintiff makes the bald assertion that wood products manufacturing and trucking activity each "constitute[] a distinct and separate economic activity occurring at the Facility, which constitutes a separate 'primary activity' occurring there." (*Id.*). Thus, having failed to show a primary activity other than 5031, Plaintiff instead insists there are multiple primary codes. (*Id.* ¶ 69.)

But the SIC Code Manual is clear. There can only be multiple SIC codes for the facility if the multi-establishment facility exception applies. Plaintiff's pleading fails to show the multi-establishment exception applies to California Cascade's Sacramento facility. Instead of pleading facts related to the three factors the SIC Code manual identifies, Plaintiff makes an unsupported legal conclusion—that wood products manufacturing and trucking are "distinct and separate economic activit[ies]." (*Id.* ¶¶ 70–71.) Such conclusory legal assertions dressed up as factual allegations are insufficient. *Paulsen*, 559 F.3d at 1071.

Without alleging facts sufficient to show that the elements of the test for multi-establishment facilities are met, Plaintiff's claim is reduced to the theory that every activity that could occur separately from the facility should be so treated. But that theory flies in the face of the express guidance that the

7

4814-3056-2994\4

*primary* activity governs. If, as Plaintiff would have the Court conclude, the existence of an activity that *could* be separate was enough to require regulation based on that activity's SIC code, industrial facilities would almost always be given multiple SIC codes, instead of a single primary code, and the limited exception for multi-establishment facilities would swallow the rule. Because Plaintiff insists on this erroneous standard, rather than plead either a primary code other than 5031 or facts from which the Court could conclude California Cascade operates as a multi-establishment facility, it fails to demonstrate California Cascade is subject to the regulations it identifies and fails to state a claim.

## IV.    CONCLUSION

Having failed to plead any facts from which the Court could conclude that California Cascade erred in filing, or that the Water Board erred in approving, the NOT based on the determination that the primary SIC Code for the facility is 5031, Plaintiff provides the Court no basis to conclude that California Cascade is required to have coverage under the General Permit. Therefore, Plaintiff has failed to state a claim either that California Cascade was obligated to have coverage under the General Permit (claim 7) or that it violated the General Permit, with which it had no obligation to comply (claims 1 through 6). Thus, California Cascade respectfully requests the First Amended Complaint be dismissed with prejudice.

Dated:  January 21, 2020                     DORSEY & WHITNEY LLP

By:  */s/ Kent J. Schmidt*
                Kent J. Schmidt (SBN 195969)
                M. Benjamin Machlis (admitted *pro hac vice*)
                Meghan Houdeshel (admitted *pro hac vice*)
                Attorneys for Defendants
                CALIFORNIA CASCADE BUILDING
                MATERIALS, INC.

8

### <u>CERTIFICATE OF SERVICE</u>

*Eden Environmental Citizen's Group, LLC v. California Cascade*
*Building Materials, Inc., et al.*
*United States District Court, Eastern District of California*
*Case Number 2:19-cv-01936 TLN KJN*

**DEFENDANT CALIFORNIA CASCADE BUILDING MATERIAL INC.'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

I hereby certify that on January 21, 2020, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Eastern District by using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

Dated:  January 21, 2020                    DORSEY & WHITNEY LLP


By:   */s/ Carmen Murashko*
            Carmen Murashko

9

CERTIFICATE OF SERVICE
CASE NO. 2:19-CV-01936 TLN KJN

4814-3056-2994\4