UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDEN ENVIRONMENTAL CITIZEN'S GROUP, LLC, | No. 2:19-cv-01936-TLN-KJN |
| Plaintiff, | |
| v. | **ORDER** |
| CALIFORNIA CASCADE BUILDING MATERIALS, INC.; AMAR S. DOMAN; and JAMES CODE, | |
| Defendants. | |

This matter is before the Court on the following: Defendant California Cascade Building

Materials, Inc.'s ("California Cascade") Motion to Dismiss (ECF No. 20); Defendants Amar S.

Doman ("Doman") and James Code's ("Code") Motion to Dismiss[1] (ECF No. 22); California

Cascade's Motion for Summary Judgment (ECF No. 45); and Plaintiff Eden Environmental

Citizen's Group, LLC's ("Plaintiff") Motion for Reconsideration of the magistrate judge's order

granting California Cascade's motion to stay discovery.  (ECF Nos. 55 and 53).  All pending

motions are fully briefed.  For the reasons set forth below, the Court hereby DENIES California

Cascade's Motion to Dismiss (ECF No. 20), GRANTS Doman and Code's Motion to Dismiss

---

[1]    The Court will refer to Defendants California Cascade, Doman, and Code collectively as
"Defendants."

1

1  (ECF No. 22), DENIES California Cascade's Motion for Summary Judgment (ECF No. 45), and

2  DENIES Plaintiff's Motion for Reconsideration as moot (ECF No. 55).

3         **I.**       **FACTUAL AND PROCEDURAL BACKGROUND**

4         This case arises from California Cascade's allegedly unlawful failure to obtain a permit

5  for the discharge of pollutants from its facility into the Sacramento River.  (*See* ECF No. 7.)

6  Plaintiff is an environmental membership group with a mission to enforce the provisions of the

7  Clean Water Act ("CWA") and the requirements of California's Industrial General Permit Order

8  2014-0057 DWQ, National Pollutant Discharge Elimination System ("NPDES") Order No.

9  CAS000001 (the "General Permit").  (*Id.* at 3–4.)  Some of Plaintiff's members reside and work

10  near Morrison Creek and the Sacramento River and use those waters and their watersheds for

11  various recreational activities and scientific study.  (*Id.* at 4.)  Plaintiff alleges its members' "use

12  and enjoyment of these natural resources have been and continue to be adversely impaired by

13  Defendants' failure to comply with the procedural and substantive requirements of the General

14  Permit and the CWA."  (*Id.*)

15         California Cascade's facility in Sacramento, California (the "Facility"), is a 20-acre wood

16  products manufacturing and distribution plant.  (*Id.* at 2, 16.)  Using on-site equipment, the

17  Facility saws, cuts, trims, planes, molds, and treats the raw wood and timber into various end

18  products it sells to retail lumber companies and businesses.  (*Id.* at 16.)  End products include:

19  pressure-treated lumber and plywood; decking; fence panels, pickets, posts, and rails; siding;

20  finishing and landscaping products; and wooden stakes.  (*Id.*)  California Cascade also operates

21  an interstate trucking operation for the transport of logs, poles, beams, lumber, and building

22  materials.  (*Id.* at 17.)  It is licensed under the U.S. Department of Transportation and provides

23  on-site maintenance and repair for its trucks.  (*Id.*)

24         Pursuant to the CWA, the Administrator of the U.S. Environmental Protection Agency

25  ("EPA") has authorized the California State Water Resources Control Board (the "State Water

26  Board") to issue NPDES permits for industrial storm water discharges.  (*Id.* at 7.)  Facilities that

27  either discharge or have the potential to discharge storm water associated with industrial activity

28  and have not obtained a NPDES permit must apply for coverage under the General Permit.  (*Id.* at

8.)  Based on the Fact Sheet accompanying the General Permit that discusses how to classify a facility with multiple activities, Plaintiff alleges California Cascade conducts distinct and separate economic activities at the Facility to which different Standard Industrial Classification ("SIC") Codes[2] apply.  (*Id.* at 18–21.)  California Cascade previously believed SIC Code 2499 (wood products, not elsewhere classified) applied to the Facility and had therefore obtained coverage under the General Permit on July 7, 2015.  (*Id.* at 17, 21.)  However, California Cascade filed paperwork with the State Water Board on August 1, 2019 to terminate its General Permit coverage, taking the position that SIC Code 5031 (warehousing and wholesale distribution of lumber) applies, which does not require coverage.  (*Id.* at 21.)  California Cascade terminated its General Permit coverage on September 17, 2019.  (*Id.* at 22.)

Plaintiff alleges the Facility engages in "at least three distinct and separate economic activities," two of which require Defendants to maintain NPDES coverage under the General Permit.  (*Id.*)  Specifically, Plaintiff alleges the Facility's operations include: "(a) warehousing and wholesale distribution of lumber and construction building materials, which fall under SIC Code 5031; (b) wood products manufacturing, which fall under SIC Codes 2421, 2431, 2491, and 2499; and (c) local trucking operations with on-site maintenance and fueling, which fall under SIC Codes 4213 and 7538."  (*Id.*)  Plaintiff alleges Defendants are currently discharging storm water into Morrison Creek and the Sacramento River from the Facility without a General Permit — thereby in violation of the CWA.  (*Id.*)

Plaintiff filed the instant action on September 23, 2019.  (ECF No. 1.)  Plaintiff's operative First Amended Complaint ("FAC") alleges seven claims for violations of the CWA. (*See* ECF No. 7.)  The first six claims allege violations of the terms of the General Permit and the seventh claim alleges a violation of the CWA by failing to have coverage under the General Permit.  (*See id.* at 30–39.)  On January 21, 2020, Defendants filed the instant motions to dismiss.

---

[2]     Plaintiff does not provide this background information, but certain SIC Codes are listed by the State Water Board as potentially regulated by the General Permit.  *See* Potentially regulated Standard Industrial Classification (SIC) Codes, California State Water Resources Control Board, https://www.waterboards.ca.gov/water_issues/programs/stormwater/sic.html (last accessed Sept. 9, 2021).

3

1      (ECF Nos. 20, 22.)  On February 6, 2020, Plaintiff filed oppositions.  (ECF Nos. 24, 27.)  On

2      February 13, 2020, Defendants filed replies.  (ECF Nos. 30, 32.)  On October 15, 2020, California

3      Cascade filed the instant motion for summary judgment.  (ECF No. 45.)  This matter is fully

4      briefed.  (ECF Nos. 46, 47.)  On December 23, 2020, Plaintiff filed the instant motion for

5      reconsideration.  (ECF No. 55.)  This matter is also fully briefed.  (ECF Nos. 57, 59.)  The Court

6      will first consider Defendants' motions to dismiss,[3] then California Cascade's motion for

7      summary judgment, and finally Plaintiff's motion for reconsideration.

8              **II.        CALIFORNIA CASCADE'S MOTION TO DISMISS**

9                      A.       Legal Standard

10             A motion to dismiss for failure to state a claim upon which relief can be granted under

11     Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a complaint.

12     *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Rule 8(a) requires that a pleading contain

13     "a short and plain statement of the claim showing that the pleader is entitled to relief."  *See*

14     *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  Under notice pleading in federal court, the

15     complaint must "give the defendant fair notice of what the claim . . . is and the grounds upon

16     which it rests."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted).

17     "This simplified notice pleading standard relies on liberal discovery rules and summary judgment

18     motions to define disputed facts and issues and to dispose of unmeritorious claims."  *Swierkiewicz*

19     *v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

20             On a motion to dismiss, the factual allegations of the complaint must be accepted as true.

21     *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court is bound to give the plaintiff the benefit of every

22     reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *Retail*

23     *Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege

24     "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to

25     relief."  *Twombly*, 550 U.S. at 570.

26             Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of

27     _____

3       The Court will also consider California Cascade's Request for Judicial Notice (ECF No.
28     21) with its motion to dismiss.

4

1    factual allegations." *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

2    While Rule 8(a) does not require detailed factual allegations, "it demands more than an

3    unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  A

4    pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

5    elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678

6    ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

7    statements, do not suffice.").  Moreover, it is inappropriate to assume the plaintiff "can prove

8    facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not

9    been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459

10   U.S. 519, 526 (1983).

11          Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough

12   facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting

13   *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual

14   content that allows the court to draw the reasonable inference that the defendant is liable for the

15   misconduct alleged." *Id.* at 680.  While the plausibility requirement is not akin to a probability

16   requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully."

17   *Id.* at 678.  This plausibility inquiry is "a context-specific task that requires the reviewing court to

18   draw on its judicial experience and common sense." *Id.* at 679.

19          In ruling on a motion to dismiss, a court may only consider the complaint, any exhibits

20   thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201.

21   *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v.*

22   *Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

23          If a complaint fails to state a plausible claim, "'[a] district court should grant leave to

24   amend even if no request to amend the pleading was made, unless it determines that the pleading

25   could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122,

26   1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

27   ///

28   ///

5

1          B.      Request for Judicial Notice

2          California Cascade requests the Court take judicial notice of Exhibits A through E.[4]  (*See*

3  ECF No. 21.)  California Cascade asserts Exhibits A and B are a document issued by the Office

4  of Management and Budget and an order of a state agency, respectively, and therefore proper for

5  judicial notice.  (*Id.* at 2–3.)  California Cascade maintains Exhibits C through E are publicly

6  available documents through the State Water Board's online database and therefore their

7  authenticity can be verified.  (*Id.* at 3.)  California Cascade seeks judicial notice of the

8  information discernible from the face of the documents — specifically, "that the NOT exists, that

9  it was filed with the . . . State Water Board on August 6, 2019, and that it was accepted by

10  the . . . State Water Board, as evidenced by the [F]acility's 'Terminated' status listed on [the

11  Stormwater Multiple Application and Report Tracking System]."  (*Id.*; *see also* ECF No. 31.)

12          In opposition, Plaintiff notes California Cascade does not request judicial notice of the

13  contents of Exhibits C and D and asks the Court to decline to consider the factual contents of

14  these documents.  (ECF No. 26 at 3–4.)  Plaintiff also argues California Cascade's request for the

15  Court to take judicial notice of the fact the NOT was accepted by the State Water Board, as

16  evidenced by the Facility's "Terminated" status, is improper because the question of whether a

17  specific document was "accepted" by an agency is not "generally known" or "accurately and

18  readily determined from sources whose accuracy cannot be questioned."  (*Id.* at 2.)  Further,

19  Plaintiff contends the factual contents of government records are not subject to judicial notice.

20  (*Id.*)

21          The Court may take judicial notice of facts that can be "accurately and readily determined

22  from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).  Courts

23  have taken judicial notice of public records, which includes government documents and orders.

24

_____

25  [4]      Exhibit A is the 1987 SIC Manual, issued by the Executive Office of the President, Office
of Management and Budget.  (ECF No. 21 at 4–697.)  Exhibit B is the Statewide General Permit

26  for Storm Water Discharges Associated with Industrial Activities, Order 2014-0057-DWQ,
effective July 1, 2015.  (*Id.* at 698–906.)  Exhibit C is Support of Notice of Termination ("NOT")

27  filed by California Cascade on August 6, 2019.  (*Id.* at 907–08.)  Exhibit D is the Response to
Request for Additional Information of NOT filed by California Cascade on September 10, 2019.

28  (*Id.* at 909–11.)  Exhibit E is the screenshot reflecting termination of coverage.  (*Id.* at 912–13.)

1   *Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001); *In re W. States Wholesale Nat'l*

2   *Gas Antitrust Litig.*, 633 F. Supp. 2d 1151, 1169 (D. Nev. 2007) (taking judicial notice of Federal

3   Energy Regulatory Commission orders).  "However, when a court takes judicial notice of a

4   matter of public record, such as another court's opinion, it may not do so for the truth of the facts

5   recited therein, but for the existence of the opinion, which is not subject to reasonable dispute

6   over its authenticity."  *Id.* at 1168–69 (D. Nev. 2007) (internal quotations and citations omitted).

7          Exhibits A through E are all publicly available government documents and orders.

8   Subject to the aforementioned caveat, California Cascade's request for judicial notice of Exhibits

9   A through E is GRANTED.

10                      C.      Motion to Dismiss

11          California Cascade argues all of Plaintiffs' claims fail to the extent they are premised on

12   violations of the General Permit because it is not required to have coverage under the General

13   Permit.  (ECF No. 20 at 10.)  Specifically, California Cascade contends the FAC should be

14   dismissed because it fails to allege (1) the primary industrial activity engaged at the Facility has a

15   SIC Code that requires General Permit coverage or (2) the Facility has activities sufficiently

16   economically separate and distinct to be considered separate "establishments" thereby requiring

17   the application of multiple SIC Codes.  (*Id.* at 10–12; *see also* ECF No. 30 at 6–9.)

18          In opposition, Plaintiff asserts the FAC alleges multiple distinct and separate economic

19   activities occur at the Facility that fall within specific SIC Codes requiring General Permit

20   coverage.  (ECF No. 24 at 7–9.)  Specifically, Plaintiff maintains the FAC pleads sufficient facts

21   regarding California Cascade's wood products manufacturing activities and interstate trucking

22   operations, both of which constitute "distinct and separate economic activit[ies]" at the Facility.

23   (*Id.* at 10–14, 18–19.)

24          Section 301(a) of the CWA prohibits the discharge of any pollutant into the waters of the

25   United States without authorization from specific provisions of the CWA.  *See* 33 U.S.C. §

26   1311(a).  One of these provisions includes § 402 of the CWA, which "provides for the issuance of

27   a permit under the NPDES."  *Ctr. for Cmty. Action & Env't Justice v. Friends of Riverside*

28   *Airport, LLC*, No. EDCV 17-1091 JGB (KKx), 2017 WL 10511577, at *2 (C.D. Cal. Sept. 28,

1   2017) (citing 33 U.S.C. § 1342(a)).  The NPDES is a permitting system that enforces "the effluent

2   and water-quality standards established by the EPA and state governments" and also "sets out the

3   conditions under which the EPA or a state with an approved water quality control program can

4   issue permits for the discharge of pollutants in wastewater."  *Id.* (citing *Nat'l Res. Def. Council,*

5   *Inc. v. Cnty. of L.A.*, 636 F.3d 1235, 1245 (9th Cir. 2011); 33 U.S.C. §§ 1342(a), (b)).  A permit is

6   required if the discharge is associated with industrial activity.  *Id.* (citing 33 U.S.C. § 1342(p)(2);

7   40 C.F.R. § 122.26(b)(14) ("Storm water discharge associated with industrial activity means the

8   discharge from any conveyance that is used for collecting and conveying storm water and that is

9   directly related to manufacturing, processing or raw materials storage areas at an industrial

10  plant.")).

11          The EPA has used its authority under § 1342(b) to authorize the State of California "to

12  develop water quality standards and issue NPDES permits."  *Id.*  The California Water Code

13  designates the State Water Board and nine regional boards "as the principal state agencies

14  charged with enforcing federal and state water pollution laws and issuing NPDES permits."  *Id.*

15  (citing Cal. Water Code §§ 1300–1324).  The State Water Board adopted a statewide General

16  Permit for industrial discharges on September 2, 2009, pursuant to § 402(p) of the CWA.  *Id.*  It

17  became effective on July 1, 2010, and it has been amended twice.  *Id.*  A violation of any NPDES

18  permit terms is a violation of the CWA.  *See* 40 C.F.R. § 122.41(a).

19          The Fact Sheet accompanying California's Industrial General Permit Order 2014-0057

20  DWQ states:

21                 40 Code of Federal Regulations [§] 122.26(b)(14) defines "storm
22                 water discharge associated with industrial activity" and describes the
                   types of facilities subject to permitting (primarily by Standard
                   Industrial Classification (SIC) code).  This General Permit provides
23                 regulatory coverage for all facilities with industrial activities
                   described in Attachment A where the covered industrial activity is
24                 the Discharger's primary industrial activity.  In some instances, a
                   Discharger may have more than one primary industrial activity
25                 occurring at a facility.

26                 The 1987 SIC manual uses the term "establishment" to determine the
                   primary economic activity of a facility.  The manual instructs that
27                 where distinct and separate economic activities are performed at a
                   single location, each activity should be treated as a separate
28                 establishment (and, therefore, separate primary activity).

8

1   National Pollutant Discharge Elimination System (NPDES) General Permit Fact Sheet for Storm

2   Water Discharges Associated with Industrial Activities, NPDES No. CAS000001, Order 2014-

3   0057-DWQ, Industrial General Permit, California State Water Resources Control Board,

4   https://www.waterboards.ca.gov/water_issues/programs/stormwater/docs/industrial/2014indgenpe

5   rmit/factsheet.pdf (last accessed Sept. 13, 2021) (hereinafter NPDES Fact Sheet).  Relevant here,

6   Attachment A provides that facilities covered by the General Permit include: "manufacturing

7   facilities," defined as "[f]acilities with [SICs] 20XX through 39XX, 4221 through 4225"; and

8   "transportation facilities," defined as "[f]acilities with SICs 40XX through 45XX (except 4221 –

9   25) and 5171 with vehicle maintenance shops, equipment cleaning operations, or airport deicing

10  operations."[5]  Attachment A, Facilities Covered by National Pollutant Discharge Elimination

11  System (NPDES) General Permit for Storm Water Discharges Associated with Industrial

12  Activities (General Permit), Order 2014-0057-DWQ Industrial General Permit, California State

13  Water Resources Control Board,

14  https://www.waterboards.ca.gov/water_issues/programs/stormwater/docs/industrial/2014indgenpe

15  rmit/atta.pdf (last accessed Sept. 13, 2021).

16      Here, as previously mentioned, Plaintiff alleges in its FAC the Facility's operations

17  include: "(a) warehousing and wholesale distribution of lumber and construction building

18  materials, which fall under SIC Code 5031; (b) wood products manufacturing, which fall under

19  SIC Codes 2421, 2431, 2491, and 2499; and (c) local trucking operations with on-site

20  maintenance and fueling, which fall under SIC Codes 4213 and 7538."  (ECF No. 7 at 22.)

21  Plaintiff explicitly alleges SIC Codes 2421, 2431, 2491, 2499, and 4213 are among the SIC

22  Codes that require General Permit coverage.  (*Id.* at 18.)

23      With respect to wood products manufacturing, Plaintiff alleges the Facility "is a twenty

24  (20) acre wood products manufacturing and distribution plant with on-site equipment utilized for

25  re-sawing, planing, treating, molding and kiln drying of the logs, poles, beams, and raw lumber

26  _____

27  [5]    With respect to transportation facilities, Attachment A further provides: "Only those portions of the facility involved in vehicle maintenance (including vehicle rehabilitation, mechanical repairs, painting, fueling, and lubrication) or other operations identified under this

28  Permit as associated with industrial activity."

1   delivered to the Facility." (*Id.* at 16.)  Plaintiff also alleges the Facility "saws, cuts, trims, planes,

2   molds and treats the raw wood and timber into wood products it sells to retail companies and

3   businesses such as Home Depot." (*Id.*)  Plaintiff finally alleges that according to the Stormwater

4   Pollution Prevention Plan ("SWPPP") previously filed by California Cascade, the Facility's

5   activities "include lumber receiving, processing, storage, and shipping.  Sawn lumber is received

6   by truck or train, processed (resawn, manufactured into various wood products, inventoried,

7   labeled, and/or repackaged), stored in sheds or on open, asphalt, concrete, or gravel surfaced lots,

8   and reshipped by truck or train." (*Id.*)  Plaintiff notes that "[b]ecause the Facility causes the

9   mechanical transformation of materials into new products, it meets the definition of a

10  'manufacturing' facility under the SIC manual." (*Id.* at 17.)

11      With respect to local trucking operations, Plaintiff alleges California Cascade "operates an

12  interstate trucking operation (with numerous trucks and drivers) which transports logs, poles,

13  beams, lumber and building materials, and is licensed under U.S. Department of Transportation

14  ("USDOT"), Federal Motor Carrier Safety Administration Carrier No. 2786835, and provides on-

15  site maintenance and repair for its trucks." (*Id.*)  Plaintiff further alleges that according to forms

16  submitted by California Cascade to the USDOT, its "trucking operation involves the use of

17  sixteen (16) truck drivers, it is an interstate trucking operation, and the trucks travelled a total of

18  754,156 miles in 2018." (*Id.* at 18.)

19      Based on the foregoing, Plaintiff adequately alleges sufficient facts to establish California

20  Cascade's wood products manufacturing and local trucking operations at the Facility should be

21  treated as separate "establishment[s]" and "distinct and separate economic activities" from

22  warehousing and wholesaling under SIC Code 5031 (what California Cascade contends is the

23  primary activity at the Facility and does not require General Permit Coverage (*see* ECF No. 20 at

24  8)). *See* NPDES Fact Sheet.  These aforementioned operations or "establishments" fall under SIC

25  Codes that require General Permit coverage.  At the pleadings stage, Plaintiff's factual allegations

26  must be accepted as true. *See Cruz*, 405 U.S. at 322.  Thus, California Cascade's motion to

27  dismiss the FAC on the basis that it fails to plead California Cascade is required to have coverage

28  under the General Permit is DENIED.

1    **III.    DOMAN AND CODE'S MOTION TO DISMISS**

2         A.    Legal Standard

3    Federal Rule of Civil Procedure 12(b)(2) allows a party to file a motion to dismiss for lack

4    of personal jurisdiction.  When there is no federal statute authorizing personal jurisdiction, the

5    district court applies the law of the state in which the district court sits.  *Mavrix Photo, Inc. v.*

6    *Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).  California's long-arm statute is

7    coextensive with federal due process requirements.  Cal. Civ. Proc. Code § 410.10.  Accordingly,

8    the "jurisdictional analyses under state law and federal due process are the same."  *Mavrix Photo*,

9    647 F.3d at 1223 (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th

10   Cir. 2004)).  "For a court to exercise personal jurisdiction over a nonresident defendant, that

11   defendant must have sufficient 'minimum contacts' with the relevant forum such that the exercise

12   of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'"

13   *Schwarzenegger*, 374 F.3d at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316

14   (1945)).  Under the minimum contacts test, there are two categories of personal jurisdiction:

15   general jurisdiction and specific jurisdiction.  *Daimler AG v. Bauman*, 571 U.S. 117, 126–27

16   (2014).

17        "If the defendant's activities in the state are 'substantial' or 'continuous and systematic,'

18   general jurisdiction may be asserted even if the cause of action is unrelated to those

19   activities."  *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997).  Specific

20   jurisdiction, on the other hand, is satisfied when the defendant's activities are directed toward the

21   forum state and the defendant's liability arises out of or relates to those activities.

22   *Schwarzenegger*, 374 F.3d at 802.  The Ninth Circuit employs a three-part test to determine

23   whether a defendant's contacts suffice to establish specific jurisdiction: "(1) The non-resident

24   defendant must purposefully direct his activities or consummate some transaction with the forum

25   or resident thereof[,] or perform some act by which he purposefully avails himself of the privilege

26   of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2)

27   the claim must be one which arises out of or relates to the defendant's forum-related activities;

28   and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must

Case 2:19-cv-01936-TLN-KJN   Document 64   Filed 09/21/21   Page 12 of 19

1    be reasonable." *Id.* The burden is on plaintiff to satisfy the first two prongs. *Id.*

2        In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff

3    bears the burden of establishing the court's jurisdiction over the defendant. *Wash. Shoe Co. v. A–*

4    *Z Sporting Goods Inc.*, 704 F.3d 668, 671–72 (9th Cir. 2012), *abrogated on other grounds by*

5    *Hungerstation LLC v. Fast Choice LLC*, No. 20-15090, 2021 WL 1697886 (9th Cir. 2021).

6    However, when the defendant's motion is based on written materials rather than an evidentiary

7    hearing, the plaintiff need only make a "prima facie showing of jurisdictional facts to withstand

8    the motion to dismiss." *Id.* (quoting *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir.

9    2006)). The court resolves all disputed facts in favor of the plaintiff. *Id.* at 672.

10                    B.        Motion to Dismiss

11        Doman and Code argue they are not subject to personal jurisdiction in California, as their

12    employment affiliation is insufficient to create jurisdiction. (ECF No. 22 at 9–10.) They contend

13    the Ninth Circuit, in applying in the fiduciary shield doctrine, "limit[s] personal jurisdiction to

14    only those instances in which the individual defendant is the alter ego of the corporation or the

15    individual's own activity in the state constitutes sufficient 'minimum contacts.'" (*Id.* at 10 (citing

16    *Water Wheel Camp Rec. Area, Inc. v. LaRance*, 642 F.3d 802 (9th Cir. 2011).)[6]

17        In opposition, Plaintiff asserts the Court has personal jurisdiction over Doman and Code

18    because "the fiduciary shield doctrine does not apply to actions brought to enforce the [CWA]

19    against responsible officers in their individual capacities" and Doman and Code have the

20    "authority to exercise control over California Cascade's activities that are violating the CWA."

21    (ECF No. 27 at 13–14.) Plaintiff notes Doman and Code's inaction is insufficient to shield them

22    from liability or the Court's jurisdiction. (*Id.* at 15.) Plaintiff maintains Doman and Code have

23    sufficient minimum contacts to be subject to personal jurisdiction in California because they run a

24    corporation with its only physical presence in California, both of them come to California for

25    business, and "operating an industrial facility without proper CWA compliance makes it

26    _____

        [6]        Doman and Code also argue Plaintiff failed to provide Code notice of the alleged
27    violations against him pursuant to the CWA citizen suit provision and therefore the Court lacks
        subject matter jurisdiction over him. (*Id.* at 9.) Because the Court finds it lacks personal
28    jurisdiction over Doman and Code, it declines to address this argument.

1    foreseeable that one will be haled into court to answer for these violations of the law." (*Id.* at 17.)

2           "Under the fiduciary shield doctrine[,] a person's mere association with a corporation that

3    causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction

4    over the person." *Wolf Designs, Inc. v. DHR Co.*, 322 F. Supp. 2d 1065, 1072 (C.D. Cal. 2004)

5    (quoting *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989). The corporate form may

6    be ignored (1) "where the corporation is the agent or alter ego of the individual defendant," or (2)

7    "by virtue of the individual's control of, and direct participation in the alleged activities." *Id.*

8    (citing *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1393 (9th Cir. 1984); *Transgo, Inc. v. Ajac*

9    *Transmission Parts Corp.*, 768 F.2d 1001, 1021 (9th Cir. 1985)).

10          In order to establish alter ego liability, a plaintiff "must make out a prima facie case (1)

11   that there is such unity of interest and ownership that the separate personalities of the two entities

12   no longer exist and (2) that failure to disregard their separate identities would result in fraud or

13   injustice." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015) (internal quotation marks,

14   alterations, and citations omitted). Here, Plaintiff does not argue in its opposition that either

15   Doman or Code acted as agents or alter egos of California Cascade. (*See* ECF No. 27.)

16   Furthermore, Plaintiff's only references to Doman and Code in its FAC are that they are "the

17   Chief Executive Officer" and "the Chief Financial Officer," respectively, of California Cascade.

18   (*See* ECF No. 7 at 6.) Accordingly, Plaintiff fails to adequately establish Doman and Code are

19   agents or alter egos of California Cascade.

20          In order to establish liability on the basis of the individual's control of, and direct

21   participation in the alleged activities, the Ninth Circuit has "allow[ed] assertion of personal

22   jurisdiction over officers of a corporation as long as the court finds those officers to have

23   sufficient minimum contacts with [the forum state]." *Davis*, 885 F.2d at 522. Here, in opposing

24   the motion to dismiss, Plaintiff fails to meet its burden to establish this Court's jurisdiction over

25   Doman and Code. The Court agrees with Doman and Code that Plaintiff conflates a theory of

26   liability (the corporate responsible officer doctrine) and the constitutional requirement for

27

28

13

1    personal jurisdiction.[7]  (ECF No. 32 at 8.)  The crux of Plaintiff's argument seems to be that

2    Doman and Code's "inaction in the face of their duty to take action is enough on its own" because

3    they have the ability as corporate officers to ensure California Cascade complies with the CWA.

4    (*Id.* at 9.)  With respect to minimum contacts, Plaintiff asserts Doman and Code "are officers

5    running a corporation with its only physical presence in California." (*Id.* at 17.)  Plaintiff notes

6    Doman and Code "admit that they have come to California repeatedly for business purposes,"[8]

7    and California Cascade has operated at their direction for years, "including contractual

8    relationships with staff members, clients, and other individuals and entities." (*Id.*)  Plaintiff

9    contends the instant claims therefore "are a natural consequence of their activities and those of the

10   corporation they direct." (*Id.*)  Plaintiff maintains "operating an industrial facility without proper

11   CWA compliance makes it foreseeable that one will be haled into court to answer for these

12   violations of the law." (*Id.*)  Plaintiff finally asserts personal jurisdiction over Doman and Code

13   comports with fair play and substantial justice because they have employed California residents

14   and taken advantage of opportunities and customers in California.  (*Id.* at 17–18.)

15           Federal courts have found that additional affirmative conduct is required to establish

16   minimum contacts in the forum state.  *See Davis*, 885 F.2d at 522 (finding personal jurisdiction

17   over two corporate directors who were the sole shareholders of a corporation, as they

18   purposefully availed themselves of the forum state by soliciting business from the state and

19   meeting with a citizen of the state to discuss opportunities for other citizens of the state to invest

20   in a fraudulent venture); *see also Wolf Designs, Inc.*, 322 F. Supp. 2d at 1072 (finding personal

21   [7]      The Court further agrees Doman and Code are correct that none of the cases Plaintiff cites
22   address personal jurisdiction.  (ECF No. 32 at 9.)  Accordingly, these cases are not on point.  (*See*
     ECF No. 27 at 13–15 (citing *N. Cal. River Watch v. Oakland Mar. Support Servs.*, No. C 10-
23   03912 CW, 2011 WL 566838 (N.D. Cal. Feb. 14, 2011); *Eden Env't Citizen's Grp. LLC v.
     Laptalo Enter., Inc.*, No. 18-cv-05544-YGR, 2019 WL 2423417 (N.D. Cal. June 10, 2019);
24   *Humboldt Baykeeper v. Simpson Timber Co.*, No. C 06-04188CRB, 2006 WL 3545014 (Dec. 8,
     2006)).)
25

26   [8]      The declarations submitted by Doman and Code both note that to the extent they travelled
     to California in connection with California Cascade business, none of the visits "were in any way
27   related to the claims asserted in this litigation." (ECF No. 22-1 at 2; ECF No. 22-2 at 2.)
     However, since that fact is disputed, the Court resolves the dispute in favor of Plaintiff.  *Wash.*
28   *Shoe Co.*, 704 F.3d at 672.

1  jurisdiction over corporate officer as he owned 50% of the stocks of the defendant corporation,

2  made final business decisions, became "the prime moving force in all policies and decisions" of

3  the defendant corporation, and even admitted he had the "final say" with respect to the defendant

4  corporation's policies); *LeDuc v. Ky. Cent. Life Ins. Co.*, 814 F. Supp. 820 (N.D. Cal. 1992)

5  (declining to find personal jurisdiction over corporate officers who made sporadic visits to the

6  forum state unconnected to the issues in the dispute, met with agents who solicit business in the

7  forum state, and signed agency contracts to solicit business from the forum state's residents, but

8  finding personal jurisdiction over the corporate officer who authored a letter to policyholders

9  (including in the forum state) to assure them about the defendant corporation's financial stability).

10        Here, Plaintiff fails in its opposition to identify affirmative conduct taken by either Doman

11  or Code with respect to the instant matter specifically.  Instead, Plaintiff relies on its argument

12  that this Court has personal jurisdiction over Doman and Code because they are "'responsible

13  corporate officers' with authority to exercise control over California Cascade's activities that are

14  violating the CWA."  (ECF No. 27 at 14–15.)  Plaintiff also generally contends Doman and Code

15  have "the requisite minimum contacts with California" because they are corporate officers who

16  direct the corporation's activities and visit the forum state for business purposes.  (*Id.* at 17.)

17  However, unlike *Davis* or *Wolf Designs, Inc.*, Plaintiff makes no argument that Doman or Code

18  are sole shareholders of California Cascade, purposefully avail themselves of California's

19  jurisdiction, conduct business travel related to the instant dispute, make final business decisions

20  for California Cascade, or have the "final say" with respect to California Cascade's policies.  885

21  F.2d at 522; 322 F. Supp. 2d at 1072.

22        Based on the foregoing, the Court finds that Plaintiff fails to make the requisite "prima

23  facie showing of jurisdictional facts to withstand the motion to dismiss."  *Wash. Shoe Co.*, 704

24  F.3d at 671–72.  Thus, Doman and Code's motion to dismiss for lack of personal jurisdiction is

25  GRANTED.

26        **IV.    CALIFORNIA CASCADE'S MOTION FOR SUMMARY JUDGMENT**

27        California Cascade moves for summary judgment, making essentially the same argument

28  as it made in its motion to dismiss — that all seven of Plaintiff's claims fail because it is not

1    required to have coverage under the General Permit.  (ECF No. 45 at 11–12, 14–16.)  California

2    Cascade notes that its motion was brought pursuant to the voluntary, self-imposed deadline in the

3    parties' Joint Status Report.  (*Id.* at 7 (citing ECF No. 33 at 8).)  Plaintiff makes a number of

4    arguments in opposition, but asks the Court in the alternative to defer its ruling on the motion

5    pursuant to Rule 56(d).  (ECF No. 46 at 23.)  Plaintiff contends it needs document subpoenas

6    served on the Central Valley Regional Water Quality Board ("CVRWQCB")[9] and responses to

7    discovery served on California Cascade to oppose the motion.  (*Id.* at 24.)  In reply, California

8    Cascade argues Plaintiff is not entitled to relief under Rule 56(d) because it has failed to

9    diligently pursue discovery over the course of the last several months.  (ECF No. 47 at 5.)

10   California Cascade maintains the additional discovery Plaintiff seeks "would not reveal any

11   additional facts that would defeat the Motion, and which even if otherwise permissible, should

12   have been conducted months ago."  (*Id.* at 6.)

13        Rule 56(d) provides: "If a nonmovant shows by affidavit or declaration that, for specified

14   reasons, it cannot present facts essential to justify its opposition, the court may . . . defer

15   considering the motion or deny it."  Fed. R. Civ. P. 56(d).  "To prevail under this Rule, parties

16   opposing a motion for summary judgment must make '(a) a timely application which (b)

17   specifically identifies (c) relevant information, (d) where there is some basis for believing that the

18   information sought actually exists.'"  *Emp'rs Teamsters Local Nos. 175 and 505 Pension Trust*

19   *Fund v. Clorox Co.*, 353 F.3d 1125, 1129–30 (9th Cir. 2004) (quoting *VISA Int'l Serv. Ass'n v.*

20   *Bankcard Holders of Am.*, 784 F.2d 1472, 1475 (9th Cir. 1986)).

21        "The burden is on the party seeking additional discovery to proffer sufficient facts to show

22   that the evidence sought exists, and that it would prevent summary judgment."  *Chance v. Pac–*

23   *Tel Teletrac Inc.*, 242 F.3d 1151, 1161 n.6 (9th Cir. 2001).  Further, a court may deny "further

24   discovery if the movant has failed diligently to pursue discovery in the past."  *Cal. Union Ins. Co.*

25   *v. Am. Diversified Sav. Bank*, 914 F.2d 1271, 1278 (9th Cir. 1990) (citations omitted).  However,

26

27   [9]    As California Cascade notes, the CVRWQCB is a division of the State Water Board
     "charged with implementing and enforcing the General Permit in the area of the state where
28   California Cascade is located."  (ECF No. 45 at 7.)

1  "[c]ourts usually employ a 'generous approach toward granting [Rule 56(d)] motions.'"  *City of*

2  *W. Sacramento, Cal. v. R & L Bus. Mgmt.*, No. 2:18-cv-00900-WBS-EFB, 2019 WL 5457029, at

3  *1–2 (E.D. Cal. Oct. 24, 2019) (citation omitted); *see also Burlington N. Santa Fe R. Co. v.*

4  *Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003).

5              A.      Diligence

6          Here, the Court finds it is a very close call on the question of Plaintiff's diligence.

7  Plaintiff admits it "held off on actively pursuing discovery over the ensuing months," believing

8  that a ruling on the correct legal standard in its motion to dismiss "would be germane to how

9  discovery was conducted." (ECF No. 46 at 25.)  However, Plaintiff is correct that bringing the

10 instant motion for summary judgment by October 15, 2020 was brought pursuant to a voluntary,

11 self-imposed deadline set by the parties in their Joint Status Report.  (*See* ECF No. 33 at 8.)  At

12 that time, the Court had not yet ruled on California Cascade's pending motion to dismiss, filed

13 approximately ten months prior.  The Court further notes that pursuant to the Initial Pretrial

14 Scheduling Order (ECF No. 3) and the parties' Joint Status Report (ECF No. 33), discovery is

15 still open and ongoing.  Plaintiff is not asking for a retroactive reopening of discovery or an

16 extension of the discovery deadline.  Accordingly, the Court finds Plaintiff has been sufficiently

17 diligent.

18             B.      Relevant Nature of the Evidence Sought

19         The discovery sought by the moving party must be "relevant to critical matters at issue in

20 the summary judgment motion." *See Jacobson v. U.S. Dep't of Homeland Sec.*, 882 F.3d 878,

21 883 (9th Cir. 2018); Fed. R. Civ. P. 56(d).  The moving party must explain why those facts would

22 preclude summary judgment. *Tatum v. City & Cnty. of S.F.*, 441 F.3d 1090, 1100 (9th Cir. 2006).

23         Plaintiff submits a declaration from its counsel, Brian Orion ("Orion")[10], who notes that

24 the day after California Cascade filed its motion for summary judgment, he sent an email to Kent

25 _____

[10]     California Cascade objects to Orion's declaration on the basis that he lacks personal

26 knowledge of the facts or circumstances surrounding the documents attached to the declaration.
(*See* ECF No. 47 at 8–9; *see also* ECF No. 48.)  However, the Court does not rely on any of the

27 attached documents in its ruling herein and therefore declines to address California Cascade's
objections.

28

1    Schmidt ("Schmidt"), counsel for California Cascade, proposing the parties meet and confer to

2    reach a stipulation to provide an extension of the hearing date on the motion or some other

3    stipulation "until the parties have certainty on a schedule for the completion of discovery on the

4    SIC Code issues." (ECF No. 46-1 at 4.)  Schmidt refused to reach a stipulation and stated

5    Plaintiff waived its right to bring its own summary judgment motion due to the Joint Status

6    Report submitted by the parties. (*Id.* at 4–5.)  Orion notes that since receiving the motion for

7    summary judgment, Plaintiff has proceeded with propounding additional discovery, including two

8    sets of requests for production of documents, one set of interrogatories, one set of requests for

9    admission, a deposition notice, and two requests for entry upon designated property. (*Id.* at 5.)

10        Plaintiff further contends in its opposition that the subpoenas "seek information to ensure

11   there is an adequate record of the facts surrounding [CVRWQCB's] NOT determination," which

12   "includes requests for copies of any internal written reports created by [CVRWQCB] on the

13   NOT, internal correspondence concerning the NOT, any guidance materials used by

14   [CVRWQCB] in determining the proper standard for applying SIC Codes to a facility, and the

15   handwritten notes Mr. Henry[11] refers to in the Henry [declaration]." (ECF No. 46 at 24 (citing

16   ECF No. 45-3).)  Plaintiff asserts the information in still-outstanding discovery is necessary to

17   respond to the motion for summary judgment, as Plaintiff has not yet conducted any depositions

18   under Rule 30(b)(6) and seeks to obtain evidence relevant to the SIC Manual such as California

19   Cascade's reports on employment, as well as sales and receipts. (*Id.*)  Plaintiff maintains these

20   issues "relate directly to the appropriate SIC Code to apply," and therefore the responses are

21   needed to enable it to fully respond. (*Id.* at 25.)

22        Based on the foregoing, the Court finds Plaintiff articulates with enough specificity how

23   the newly discovered facts may preclude summary judgment. *See Tatum*, 441 F.3d at 1100.

24   ///

25

26   [11]      Along with their motion, California Cascade submits a declaration from Noah Henry, a
     Scientific Aide for the CVRWQCB who visited the Facility to verify the primary SIC Code
27   California Cascade identified in its NOT. (*See* ECF No. 45-3.)  Henry notes that during his visit
     to the Facility, he took handwritten notes. (*Id.* at 2.)  Plaintiff asserts these notes are related "to
28   the issue of the validity and thoroughness of the NOT determination." (ECF No. 46 at 24.)

1       Accordingly, California Cascade's Motion for Summary Judgment is DENIED.  Both

2   parties may refile a motion for summary judgment with respect to the permit coverage issue by

3   the dispositive motion deadline.  The parties are further ordered to submit a Joint Status Report

4   with an updated proposed case schedule.

5       **V.    PLAINTIFF'S MOTION FOR RECONSIDERATION**

6       Plaintiff seeks reconsideration of the magistrate judge's December 10, 2020 Order (ECF

7   No. 53) granting California Cascade's motion to stay discovery.  (ECF No. 55.)  However, the

8   magistrate judge ordered discovery stayed until this Court rules on the merits of its motion to

9   dismiss or motion for summary judgment, or on Plaintiff's request under Rule 56(d) to conduct

10  and submit further discovery.  (ECF No. 53 at 2.)  As the Court has now ruled on California

11  Cascade's motion to dismiss and on Plaintiff's request under Rule 56(d) to conduct and submit

12  further discovery, the Court DENIES Plaintiff's motion for reconsideration as moot.  (ECF No.

13  55.)

14      **VI.    CONCLUSION**

15      Based on the foregoing, the Court hereby DENIES California Cascade's Motion to

16  Dismiss (ECF No. 20), GRANTS Doman and Code's Motion to Dismiss (ECF No. 22), DENIES

17  California Cascade's Motion for Summary Judgment (ECF No. 45), and DENIES Plaintiff's

18  Motion for Reconsideration as moot (ECF No. 55).  Defendants shall file an answer to the First

19  Amended Complaint not later than thirty (30) days after the electronic filing date of this Order.

20      IT IS SO ORDERED.

21  Dated:  September 20, 2021

22

23

24      Troy L. Nunley
        United States District Judge
25

26

27

28

19