Christopher Sproul (State Bar No. 126398)
Brian Orion (State Bar No. 239460)
Environmental Advocates
5135 Anza Street
San Francisco, California 94121
Telephone: (415) 533-3376
Facsimile: (415) 358-5695
Email: csproul@enviroadvocates.com
borion@enviroadvocates.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

EDEN ENVIRONMENTAL CITIZEN'S GROUP, LLC, a California limited liability company; CALIFORNIA COASTKEEPER, a California non-profit corporation doing business as CALIFORNIA COASTKEEPER ALLIANCE; OUR CHILDREN'S EARTH FOUNDATION, a California non-profit corporation; and ECOLOGICAL RIGHTS FOUNDATION, a California non-profit corporation,

    Plaintiffs,

  v.

CALIFORNIA CASCADE BUILDING MATERIALS, INC., a Delaware corporation,

    Defendants.

Civil Case No. 2:19-cv-01936 KJN

[PROPOSED] CONSENT DECREE

**WHEREAS**, Eden Environmental Citizen's Group, LLC ("Eden"), California Coastkeeper Alliance ("CCKA"), Our Children's Earth Foundation ("OCE"), and Ecological Rights Foundation ("EcoRights") (collectively, "the Environmental Groups") are public interest organizations dedicated to the preservation, protection, and restoration of the environment, the wildlife and the natural resources of California's waters, including the Sacramento River watershed (the "Receiving Waters");

**WHEREAS**, the Environmental Groups allege that Defendant California Cascade Building Materials, Inc. ("California Cascade") is the owner and operator of the facility located at 7512 14th Avenue, in Sacramento, California (hereinafter "the Facility");

**WHEREAS**, storm water flows off-site, through the County of Sacramento's separately permitted Municipal Separate Storm Sewer System ("MS4"), before discharging into the Receiving Waters;

**WHEREAS,** the Parties have agreed that California Cascade will seek authorization for storm water discharges from the Facility via the Industrial Storm Water Permit, as defined below;

**WHEREAS,** before filing this action and/or seeking leave to file the amended complaint in this action, the Environmental Groups provided notice of alleged violations of the Clean Water Act ("CWA") and the Resource Conservation and Recovery Act ("RCRA") by California Cascade and of the Environmental Groups' intention to file suit against California Cascade to the Administrator of the United States Environmental Protection Agency ("EPA"); the Regional Administrator of EPA Region IX; the Executive Director of the State Board; the Director of the California Department of Resources Recycling and Recovery ("the Resources Department"), the Executive Officer of the California Regional Water Quality Control Board, Region 5 ("Regional Board"); the U.S. Attorney General, and California Cascade ("Notice Letter") as required by the CWA, 33 U.S.C. § 1365(b)(1)(A) and RCRA, 42 U.S.C. § 6972(b)(2)(A);

**WHEREAS**, the Environmental Groups have filed a complaint and/or a request for leave to file an amended complaint against California Cascade in the United States District Court, Eastern District of California alleging ongoing violations of the CWA and RCRA;

**WHEREAS**, this Consent Decree shall be submitted to the EPA and United States Department of Justice ("DOJ") for the statutory review period pursuant to 33 U.S.C. §1365(c) and 40 C.F.R. § 135.5;

**WHEREAS**, the Environmental Groups and California Cascade have agreed that it is in the Parties' mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint and proposed Amended Complaint without further proceedings and without any admission of liability on the part of California Cascade; and

**WHEREAS**, all actions taken by California Cascade pursuant to this Consent Decree shall be made in compliance with all applicable Federal and State laws and local rules and regulations.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

**I. GENERAL OBJECTIVES**

1. The objectives of this Consent Decree are:

    a. To ensure that California Cascade continues its efforts to comply with the CWA, RCRA, and with the Industrial Storm Water Permit;

    b. To ensure that California Cascade continues to use, implement, and improve ways, means, and methods to prevent or reduce the discharge of pollutants in storm water runoff from the Facility; and

    c. To further the goals and objectives of the CWA and RCRA.

**II. DEFINITIONS**

2. Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA, RCRA, or in regulations or rules promulgated under the CWA or RCRA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, the following definitions apply:

"Industrial Storm Water Permit" means National Pollutant Discharge Elimination System ("NPDES") General Permit NO CAS000001 adopted by the California State Water Resources Control Board ("State Board") via Water Quality Order No. 2014-0057-DWQ ("Industrial Storm Water Permit"), effective July 1, 2015, and amended November 6, 2018, including any further amendment or replacement of the same.

"Consent Decree" means this Consent Decree and any attachments or Exhibits.

"Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

"Effective Date" means the effective date of this Consent Decree, which shall be the date it is entered by the Court.

**III. JURISDICTION AND VENUE**

3. Venue is proper in this judicial district pursuant to section CWA § 505(c), 33 U.S.C. § 1365(c), and 28 U.S.C. § 1391(b) and (c). The Parties waive any and all objections that they may have to the Court's jurisdiction to enter and enforce this Consent Decree.

**IV. EFFECT OF CONSENT DECREE/RELEASE OF CLAIMS**

4. The Environmental Groups do not, by their consent to this Consent Decree, warrant or aver in any manner that California Cascade's compliance with this Consent Decree will constitute or result in compliance with any federal or state law or regulation.

5. This Consent Decree is neither a permit nor a modification of existing permits under any federal, state, or local law and in no way relieves California Cascade of its responsibilities to comply with all applicable federal, state and local laws and regulations.

6. Compliance with this Consent Decree, including all monetary payments due under this Consent Decree (including but not limited to the payment of any stipulated payments) and the completion of all remedial measures required pursuant to this Consent Decree resolves the Environmental Groups' civil claims for the violations alleged against California Cascade in this action.

7. <u>The Environmental Groups' Release</u>: Upon the Effective Date of this Consent Decree, the Environmental Groups and their officers, directors, employees, and each of those persons or entities' successors and assigns, and their agents, attorneys, and other representatives hereby release California Cascade, and its current and former officers, directors, employees, members, parents, subsidiaries, affiliated entities under common ownership, equity holders, landlords, and each of those entities' successors and assigns, and its agents, attorneys, consultants and other representatives and any other person named or that could have been named in the Notice Letter ("California Cascade Releasees"),

from all common law or statutory legal claims including for CWA and RCRA violations alleged in the Complaint and proposed Amended Complaint up to and including the Effective Date of this Consent Decree. Except for claims for California Cascade's failure to comply with this Consent Decree, the Environmental Groups further release California Cascade, and its successors and assigns, from all claims pertaining to alleged violations of the CWA or RCRA that could have been raised in the Complaint or proposed Amended Complaint or that may arise relating to discharges of storm water from the Facility between the Effective Date and the termination of this Consent Decree. The Parties understand and intend that, in light of the scope of the Environmental Groups' releases, this Consent Judgment will have full claim preclusion with respect to the Parties and those in privity with the Parties.

8. <u>California Cascade's Release</u>: Upon the Effective Date of this Consent Decree, California Cascade, on its behalf and on behalf of its officers, directors, employees, members, and each of their successors and assigns, and its agents, attorneys, and other representatives releases the Environmental Groups (and their current and former officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of its successors and assigns, and its agents, attorneys, and other representatives) from, and waives all claims which arise from or pertain to this action, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which could have been claimed for matters associated with or related to the Environmental Groups' Notice Letter, Complaint, and proposed Amended Complaint (the "Action") up to the Effective Date.

In furtherance of the foregoing releases in Paragraphs 8 and 9, the Parties waive any and all rights and benefits which they now have, or in the future may have, conferred upon them by virtue of the provisions of Section 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

## V. APPLICABILITY

9. The provisions of this Consent Decree apply to and bind the Environmental Groups and California Cascade (collectively, the "Parties"), including any successors or assigns. The Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Parties, and to legally bind the Parties to its terms.

10. The Parties agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms. By entering into this Consent Decree, California Cascade does not admit liability for any purpose as to any allegation or matter arising out of the Action. Nothing in this Consent Decree shall constitute an admission of any fact or a waiver of any right unless specifically set forth herein.

11. Except as otherwise provided in this Part, the sale or transfer of ownership or operation of any portion of the Facility does not relieve California Cascade of its obligations under this Consent Decree. Not later than thirty (30) days prior to sale or transfer of ownership or operation of any portion of the Facility, California Cascade shall provide a copy of this Consent Decree to each purchaser or transferee. California Cascade also shall give written notification to the Environmental Groups, in accordance with Part XXIII (NOTICES AND SUBMISSIONS), of the sale or transfer of ownership or operation of the Facility within thirty (30) days of such sale or transfer and may seek from the Court a modification of this Decree that would transfer responsibility for compliance with some or all of these provisions to its successor. The Court shall grant such request if the successor is ready, willing and able to fully implement obligations the successor would assume under this Consent Decree.

## VI. DISCHARGE LIMITATIONS

12. <u>Non-Storm Water Discharge Prohibition</u>: California Cascade shall not discharge any wastewater constituting non-storm water from the Facility, directly or indirectly, into the Receiving Waters, except as authorized by the Industrial Storm Water Permit. Any such discharges shall be considered a breach of this Consent Decree.

13. California Cascade shall limit storm water discharges to only the Designated Discharge Locations designated in its Storm Water Pollution Prevention Plan ("SWPPP") for the Facility.

14. <u>Storm Water Best Management Practices</u>: California Cascade shall design and operate storm water Best Management Practices ("BMPs") in conformance with Industrial Storm Water Permit § V.A.

## VII. REMEDIAL MEASURES

15. Within seven (7) days of the Effective Date, California Cascade shall prepare and submit to the State Board and the Environmental Groups a Notice of Intent for the Facility to be covered under the Industrial Storm Water Permit.

16. Within sixty (60) days of the Effective Date, California Cascade shall prepare and submit to the State Board and the Environmental Groups an updated SWPPP that complies with the requirements of the Industrial Storm Water Permit.

17. California Cascade shall comply with all requirements of the Industrial Storm Water Permit and any revised version of this permit issued by the State Board from the Effective Date through termination of this Consent Decree.

18. In accord with the Industrial Storm Water Permit, California Cascade shall revise its SWPPP to provide for revised BMPs and any other necessary measures and prepare Exceedance Response Action ("ERA") reports as specified in Section XII of the Industrial Storm Water Permit if pollutant levels in storm water discharges from the Facility exceed applicable NALs.

## VIII. SAMPLING, MONITORING, INSPECTION & REPORTING

### A. Sampling Program

19. California Cascade shall collect storm water discharge samples from each Discharge Point at the Facility in accord with the requirements in the Industrial Storm Water Permit.

20. California Cascade shall analyze each storm water sample collected for each of the following parameters: oil and grease, total suspended solids, pH, copper, iron, zinc, and chemical oxygen demand. California Cascade may discontinue sampling for any parameter listed above, unless it is otherwise required to sample for that parameter pursuant to the Industrial Storm Water Permit if the sample levels of these parameters in each of the samples collected by California Cascade at the Facility are below the levels set forth in the table, below for one reporting year (July 1 through June 30),

provided samples are collected from at least two Qualifying Storm Events ("QSEs") during that period. If less than two QSEs are sampled in a reporting year, then California Cascade may discontinue sampling of a given sample parameter if the level of that parameter is below the applicable sample level after two sampled QSEs. If the level of a parameter exceeds the applicable sample level in a sample taken from any one sample location, California Cascade shall continue to analyze samples for the presence of that parameter at all sample locations unless it can show that the source of that parameter is limited to a subset of locations at the Facility. In the case of such latter showing, California Cascade may discontinue analyzing its samples for that parameter at sample locations where the source could not reasonably contribute that pollutant to storm water runoff from that sample location.

| **Sampling Parameter** | **Sampling Level** |
|---|---|
| Oil and Grease | N/A |
| TSS | N/A |
| pH | N/A |
| Copper | 0.031 mg/L |
| Iron | 1.0 mg/L |
| Zinc | 0.24 mg/L |
| COD | 120 mg/L |

21. Should operations change at the Facility, California Cascade shall conduct sampling for additional priority pollutants listed in 40 C.F.R. § 131.38 likely to be present in California Cascade's storm water discharges as a result of the changed operations.

22. Where California Cascade discharges storm water into a storm drain inlet or catch basin, California Cascade may choose to collect a sample below any insert or treatment system. If California Cascade chooses not to collect a post-filtration or post-treatment sample, the quality of storm water samples entering a storm drain inlet or catch basin containing a fabric insert shall be considered the same as a sample collected below the insert.

23. Storm water samples from a QSE, as defined by the Industrial Storm Water Permit, shall

be taken in compliance with the requirements for QSE sampling set forth in the Industrial Storm Water Permit.

24. In accord with the Industrial Storm Water Permit, California Cascade shall upload storm water sample results to the State Board's Storm Water Multiple Application and Reporting Tracking System (SMARTS) in compliance with the Industrial Storm Water Permit.

**B. Visual Observations**

25. California Cascade shall complete visual observations in accord with the Industrial Storm Water Permit, which requires visual observations at least once per calendar month.

**C. Compliance Monitoring**

26. <u>Site Inspections</u>. The Environmental Groups may conduct up to two (2) site inspections per year at the Facility during the life of this Consent Decree. The site inspections shall occur during normal business hours and in conjunction with California Cascade's intended sampling of a QSE. Environmental Groups' site inspections shall be performed by Matt Hagemann, at SWAPE (the "Independent QISP"). California Cascade shall provide the Environmental Groups notice of an anticipated QSE, during which it intends to conduct sampling, during each six-month compliance period under the Industrial Storm Water Permit (January – June and July-December). The Environmental Groups may elect to have the Independent QISP schedule a site inspection during that anticipated QSE.

27. During the site inspections, the Independent QISP shall be allowed access to the Facility's SWPPP, Monitoring Implementation Plan, monitoring records, reports, and QSE sampling data for the Facility. During the site inspections, the Independent QISP may request splits of the samples of storm water discharges collected by CCBM, during the QSE, from the Facility or the Independent QISP may collect their own sample of the storm water discharges from the Facility during the QSE. A certified California laboratory shall analyze any splits of storm water samples requested and copies of the lab reports shall be provided to California Cascade within five (5) business days of receipt. The Independent QISP shall be permitted to take photographs or video recording of storm water discharges, storm water infrastructure, and structural BMPs during any Site Inspection. If the Independent QISP takes photographs or video recording, the Independent QISP shall provide California Cascade with the

photographs or video recording within fourteen (14) calendar days after the Site Inspection. The Independent QISP and the Environmental Groups agree to keep any photographs or video recordings strictly confidential, except that photographs and video recording may be presented in un-edited form for review by Magistrate Newman for purposes of resolving disputes pursuant to Paragraph 44. The Independent QISP shall agree to execute, as necessary, waivers, releases and similar agreements and comply with all workplace safety requirements while on-site.

### D. Cleaning, Maintenance, and Inspection Logs

28. During the life of this Consent Decree, California Cascade shall keep contemporaneous logs documenting the performance of BMP operation and maintenance, site inspections, and storm water sampling as required by the Industrial Storm Water Permit.

### E. Reporting

29. During the term of this Consent Decree, California Cascade shall provide the Environmental Groups with notice of documents pertaining to the Industrial Storm Water Permit submitted to or received from the California Regional Water Quality Control Board for the Central Valley Region ("Regional Board") or the State Board concerning the Facility. If a document submitted to or received from the Regional or State Board is not available on SMARTS, the Environmental Groups may request a copy of that document and California Cascade shall provide an electronic copy of the document within ten (10) business days of receiving the request.

## IX. EMPLOYEE TRAINING

30. California Cascade shall ensure that all staff assigned tasks necessary to comply with the Industrial Storm Water Permit are appropriately trained in the skills necessary for such compliance. Such training shall at least include instruction in: (1) compliance with the Industrial Storm Water Permit's prohibition of non-storm water discharges, so that employees know what non-storm water discharges are and how to detect them and prevent them, (2) BMP implementation and maintenance to ensure that BMPs are implemented effectively to prevent the exposure of pollutants to storm water, to prevent the discharge of contaminated storm water, and to ensure the proper treatment of storm water at the Facility, (3) the collection of storm water samples from each discharge location as required by the

Industrial Storm Water Permit, including proper sampling protocols, chain of custody requirements, proper collection and storage of storm water samples and submission of samples to a certified laboratory, preparing and maintaining accurate and complete records of all sampling events and analysis results, (4) the performance of visual observations at the Facility as required by the Industrial Storm Water Permit and proper record keeping for all such visual observations.

31. California Cascade shall complete staff training per the training schedule established in the SWPPP.

32. California Cascade shall maintain training records to document compliance with this section, and shall provide the Environmental Groups with a copy of these records within fourteen (14) days of receipt of a written request. The Training Program shall be specified in California Cascade's SWPPP.

## XI. MITIGATION, FEES, AND COSTS

33. <u>Supplemental Environmental Project Funding</u>:  Within thirty (30) days of the Effective Date, California Cascade shall tender payment to the Rose Foundation for Communities and the Environment the sum of $50,000 for supplemental environmental projects relating to the reduction, prevention or mitigation of the effects of discharges of pollutants to the Receiving Waters or their watersheds. Such payments shall be sent via certified mail, return receipt requested, to the following address (with notice to the Environmental Groups that such payments have been sent):

> Tim Little
> Rose Foundation for Communities and the Environment
> 1970 Broadway, Suite 600
> Oakland, California 94612-2218

Concurrent with its reporting to the United States Department of Justice, which is provided once all funds are granted, the Rose Foundation will provide California Cascade documentation of the supplemental environmental project or projects related to the reduction, prevention or mitigation of, the effects of discharges of pollutants to the Receiving Waters or their watersheds on which the funds provided were spent.

34. <u>Reimbursement of Fees and Costs</u>:  California Cascade shall reimburse the

Environmental Groups in the amount of $240,000 to help defray the Environmental Groups' investigation fees and costs, expert fees and costs, reasonable attorneys' fees, and all other costs incurred as a result of investigating the activities at the Facility, bringing these matters to California Cascade's attention, and negotiating a resolution of this action in the public interest. Such payment shall be made by check made payable to Environmental Advocates Attorney Client Trust Account. Payment shall be sent either via wire transfer to the Environmental Advocates Attorney-Client Trust Account (according to instructions to be provided by Environmental Advocates) or via certified mail, return receipt requested, to the following address:

> Christopher A. Sproul
> Environmental Advocates
> 5135 Anza Street
> San Francisco, California 94121

35. <u>Compliance Monitoring Funds</u>:  California Cascade shall pay to the Environmental Groups Ten Thousand Dollars ($10,000) for costs and fees associated with monitoring California Cascade's compliance with this Consent Decree. California Cascade shall make this payment within thirty (30) days of the Effective Date by check payable to "Environmental Advocates Attorney-Client Trust Account." California Cascade shall make payments via certified first class mail, return receipt requested to:

> Christopher A. Sproul
> Environmental Advocates
> 5135 Anza Street
> San Francisco, California 94121

**XIII. DISPUTE RESOLUTION, ENFORCEMENT OF CONSENT DECREE, AND STIPULATED PAYMENTS**

42. Any disputes between the Parties concerning any provision of this Agreement shall be subject to the following dispute resolution procedures.

43. If any Party asserts that another Party is in violation of this Consent Decree, it shall provide that Party written notice asserting the violations, which shall contain a sufficient description of

the violation alleged and the action to be taken to correct the violation ("Violation Notice"). If the Party alleged to be in violation corrects the violation within thirty (30) days of receiving the notice, or for violations that are not capable of being fully corrected within thirty (30) days commences corrective action and thereafter diligently pursues the corrective action, no further enforcement action under the terms of this Consent Decree, including the dispute resolution process described below, shall be taken by any Party.

44. If the Party receiving the notice described in Paragraph 43 disputes the violations alleged or the requested action to correct the action requested, such Party shall provide notice to the other Party of its dispute prior to the expiration of the thirty (30) day period to correct the violation provided in Paragraph 43 ("Dispute Notice").  Within fifteen (15) days of transmission of the notice of dispute, the Parties shall meet and confer to determine whether a violation has occurred and to develop a mutually agreed upon plan, including implementation dates, to resolve the dispute. If the Parties have not resolved the dispute within fifteen (15) days of the meet and confer, the dispute shall be submitted to mediation before Magistrate Judge Kendall J. Newman. If the Parties are unable to reach a mutually agreeable resolution of the dispute during this mediation, Magistrate Judge Newman shall have the authority to declare an impasse and proceed to resolve the dispute by issuing a binding, non-appealable order. Before issuing such an order, Magistrate Judge Newman may take and consider such evidence and briefing as he deems relevant and useful for resolving the dispute. Magistrate Judge Newman, or his successor at the District Court of California, Eastern District if the District Court assigns one, shall retain jurisdiction over this action for the limited purposes of enforcement of the terms of this Consent Decree.

45. For any dispute that must be resolved by Magistrate Newman, if California Cascade is determined to be in violation of the terms of this Consent Decree, Magistrate Newman may impose a stipulated payment of up to $500 per day, accruing from the end date of the cure period provided for in Paragraph 43 until such time as the violation is corrected or, for violations that are not capable of being fully corrected immediately, such time as the Party commences corrective action and thereafter diligently pursues the corrective action, using the criteria set forth in 33 U.S.C. § 1319(d). Any stipulated payment owing shall be paid to the Rose Foundation for Communities and the Environment

within fourteen (14) days of the Judge Newman's determination regarding the amount of the Stipulated Payment. Stipulated payments shall be used for projects relating to the reduction, prevention or mitigation of, or research on, the effects of discharges to the Sacramento River watershed.

46. <u>Litigation Costs and Fees</u>: Litigation costs and fees incurred in conducting meet and confer or otherwise addressing and/or resolving any dispute, including an alleged breach of this Consent Decree, shall be awarded in accord with the standard established by 33 U.S.C. §1365(d), and case law interpreting that standard.

**XIV. NOTICES AND SUBMISSIONS**

47. Except as otherwise expressly provided in this Consent Decree, whenever under the terms of this Consent Decree notice is required to be given or a report or other document is required to be forwarded by one Party to another, it shall, to the extent feasible be sent to the following individuals as electronic computer files at the e-mail addresses specified below. If a given document cannot be e-mailed, it shall be mailed by U.S. Mail to the following addresses. Any change in the individuals designated by either Party must be made in writing to the other Parties.

As to the Environmental Groups:

Christopher Sproul
Environmental Advocates
5135 Anza Street
San Francisco, CA 94121
(415) 533-3376
Email: csproul@enviroadvocates.com

As to California Cascade:

California Cascade Building Materials
7512 14th Avenue
Sacramento, CA 95820
Attn: President
(916) 736-3353
Email: legal.notice@californiacascade.com

**XV. MISCELLANEOUS PROVISIONS**

48. **Execution in Counterparts:** The Consent Decree may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document.

49. **Severability**: In the event that any of the provisions of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

50. **Construction**: The language in all parts of this Consent Decree, unless otherwise stated, shall be construed according to its plain and ordinary meaning.

51. **Integrated Consent Decree**: All agreements, covenants, representations and warranties, express or implied, oral or written, of the Parties concerning the subject matter of this Consent Decree are contained herein.

52. **Facsimile Signatures**: Signatures of the Parties transmitted by facsimile shall be deemed binding.

53. **Force Majeure**: California Cascade shall not be considered to be in default in the performance of any of its Consent Decree obligations when its failure to perform is due to a force majeure." A force majeure event includes but is not limited to any act of God, war, fire, strike, insurrection, riot, earthquake, flood, natural catastrophe, international or regional pandemic or similar health event resulting in government orders shutting down or limiting business operations or any restraint by a court order or public authority. A force majeure event does not include normal inclement weather, such as anything less than or equal to a 100 year/24 hour storm event, or inability to pay. California Cascade shall have the burden of establishing that a force majeure event that it could not reasonably have been expected to avoid, and which by exercise of due diligence it has been unable to overcome has concluded its compliance. California Cascade shall exercise due diligence to resolve any force majeure event and return to compliance. If California Cascade claims existence of a force majeure event, it shall notify the Environmental Groups in writing within twenty-one (21) calendar days of the date that California Cascade first knew of the event or circumstance that caused or would cause a violation of this Consent Decree. The notice shall describe the reason for the nonperformance and specifically refer to this Section. It shall describe: a) the anticipated length of time the delay may persist; b) the cause or causes of the delay; c) the measures taken or to be taken by California Cascade to prevent or minimize the delay; d) the schedule by which the measures will be implemented; and e) the anticipated date of compliance. California Cascade shall adopt all reasonable measures to avoid and

minimize such delays. Any disputes between the Parties concerning the existence of a force majeure shall be resolved pursuant to the Dispute Resolution provisions of Part XXV (DISPUTE RESOLUTION).

54. The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

## XVI. EFFECTIVE AND TERMINATION DATES

55. Within three (3) days of the final signature of the Parties, the Environmental Groups shall submit this executed Consent Decree to EPA and DOJ for a 45-day review and comment period pursuant to CWA section 505(c)(3) and 40 C.F.R. § 135.5. The Parties request that the Court not enter its judgment on consent until the expiration of this review and comment period. If EPA or DOJ requests or suggests revisions to this Consent Decree or objects to entry of this Consent Decree in the form presented, the Parties shall within ten (10) days meet and confer on whether to revise this Consent Decree in accord with the requested or suggested revisions provided by EPA or DOJ and/or otherwise to accommodate EPA or DOJ's objections. If the Parties do not mutually agree to any such revisions or modifications, the Parties shall so notify the Court and request entry of the Consent Decree in the form drafted. If the Court objects to entry of this Consent Decree in the form presented, the Parties will attempt in good faith to agree to revisions of this Consent Decree necessary so that it is acceptable to the Court.

56. This Consent Decree shall terminate on July 31, 2025, except with regard to the Environmental Groups' rights under paragraphs 26 and 27 which shall terminate on the date that is three (3) years from the Effective Date, provided that California Cascade has made all monetary payments owed under the Consent Decree and there is no pending Dispute Resolution proceeding pursuant to the provisions of Part XXV (DISPUTE RESOLUTION). If California Cascade has not made all monetary payments owed under the Consent Decree or if there is a pending Dispute Resolution proceeding, the Consent Decree shall be extended, only with regard to those provision necessary to enforce California Cascade's outstanding payment obligation or conclude any pending Dispute Resolution proceedings.

1  **IT IS SO ORDERED:**

2  Dated: March 21, 2022

3
4  _____
   KENDALL J. NEWMAN
5  UNITED STATES MAGISTRATE JUDGE

6  APPROVED AS TO FORM:

7  ENVIRONMENTAL ADVOCATES

8
9  Dated: March 4, 2022            By: /s/ Christopher Sproul
                                       Christopher Sproul
10                                     Attorney for Plaintiffs

11 Counsel for California Cascade

12
13 Dated: March 11, 2022           By: /s/ Ben Machlis
                                       Ben Machlis
14                                     Attorney for California Cascade

15
16 APPROVED AS TO CONTENT:

17 Dated: March 3, 2022            By: /s/ Aiden Sanchez
                                       Aiden Sanchez
18                                     Eden Environmental

19
20 Dated: March 6, 2022            By: /s/ Fredric Evenson
                                       Fredric Evenson
21                                     Ecological Rights Foundation

22
23 Dated: March 4, 2022            By: /s/ Sean Bothwell
                                       Sean Bothwell
24                                     California Coastkeeper Alliance

25
26 Dated: March 11, 2022           By: /s/ John Russell
                                       John Russell, President
27                                     California Cascade Building Materials, Inc.

28

Dated: March 4, 2022						By: /s/ Tiffany Schauer
								Tiffany Schauer
								Our Children's Earth Foundation